IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DISTRICT

| | | |
|---|---|---|
| NORTHERN ASSURANCE COMPANY OF AMERICA, NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, INDEMNITY INSURANCE COMPANY OF NA, GREAT AMERICAN INSURANCE COMPANY, AGCS MARINE INSURANCE COMPANY, ESSEX INSURANCE COMPANY, CATLIN INSURANCE COMPANY, ZURICH AMERICAN INSURANCE COMPANY, And TRAVELERS INSURANCE COMPANY, | * * * * * * * * * * * * | |
| | * | CASE NO.: 1:11-cv-00283 |
| *Plaintiffs* | * * | |
| VERSUS | * * | |
| C&G BOAT WORKS, INC. | * * | |
| *Defendant* | * * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## ANSWER TO COMPLAINANTS' ORIGINAL COMPLAINT FOR DECLARATORY JUDGMENT AND COUNTERCLAIM FOR DECLARATORY JUDGMENT

COMES NOW, C & G Boat Works, Inc., for answer to Complainant's Complaint for Declaratory Judgment and Counterclaim for Declaratory Judgment, avers:

### I.

## ANSWER TO COMPLAINANTS' ORIGINAL COMPLAINT FOR DECLARATORY JUDGMENT

### FIRST DEFENSE

In answer to the enumerated allegations of Complainant's Original Complaint for Declaratory Judgment, Defendant avers:

I.    Parties, Jurisdiction and Venue

1.

C & G Boat Works, Inc. admits this case arises out of a claim for insurance benefits made by C & G Boat Works, Inc. under a policy issued by the Underwriters, policy number MNB 1944-2010.

2.

C & G Boat Works, Inc. admits Underwriters claim NAC is a company organized and existing under the laws of the State of Massachusetts with its principal place of business located in the state of Massachusetts and qualified to conduct business in the State of Alabama.

3.

C & G Boat Works, Inc. admits Underwriters claim National Union Fire Insurance Company of Pittsburgh, PA is a company organized and existing under the laws of the State of Pennsylvania and at all times pertinent, was authorized to conduct business in the State of Alabama.

4.

C & G Boat Works, Inc. admits Underwriters claim Indemnity Insurance Company of NA is a company organized and existing of the laws of the State of Pennsylvania and at all times pertinent, was authorized to conduct business in the State of Alabama.

5.

C & G Boat Works, Inc. admits Underwriters claim Great

American Insurance Company is a company organized and existing of the laws of the State of Ohio and at all times pertinent, was authorized to conduct business in the State of Alabama.

6.

C & G Boat Works, Inc. admits Underwriters claim AGCS Marine Insurance Company is a company organized and existing of the laws of the State of Illinois and at all times pertinent, was authorized to conduct business in the State of Alabama.

7.

C & G Boat Works, Inc. admits Underwriters claim Essex Insurance Company is a company organized and existing of the laws of the State of Delaware  and at all times pertinent, was authorized to conduct business in the State of Alabama.

8.

C & G Boat Works, Inc. admits Underwriters claim Catlin Insurance Company, Inc. is a company organized and existing of the laws of the State of Texas and at all times pertinent, was authorized to conduct business in the State of Alabama.

9.

C & G Boat Works, Inc. admits Underwriters claim Zurich American Insurance Company is a company organized and existing of the laws of the State of New York and at all times pertinent, was authorized to conduct business in the State of Alabama.

10.

C & G Boat Works, Inc. admits Underwriters claim Travelers Insurance Company is a company organized and existing of the laws of the State of Connecticut and at all times pertinent, was authorized to conduct business in the State of Alabama.

11.

C & G Boat Works, Inc. admits it is a corporation organized and existing under the laws of the State of Alabama with its principal place of business in the State of Alabama.

12.

Paragraph 11 sets forth issues and conclusions of law which require no response, though should a response be deemed necessary, C & G Boat Works, Inc. admits Underwriters' claim is for Declaratory Judgment brought pursuant to Federal Rules of Civil Procedure, Rule 57 and 28 U.S.C. §§2201 and 2202.

13.

C & G Boat Works, Inc. admits that the parties hereto are diverse.

14.

In response to the allegations of paragraph 14, C & G Boat Works, Inc. shows that at all times it is entitled to coverage under policy MNB 1944-2010, that Underwriters have denied coverage and thereby created a real, substantial and justiciable controversy between Underwriters and C & G Boat Works, Inc.

4

concerning C & G Boat Works, Inc.'s entitlement to insurance
coverage with respect to the policy of insurance issued by
Underwriters, policy number MNB 1944-2010.

15.

C & G Boat Works, Inc. admits the U.S. District Court and
Division is a proper District and Division to file this action.


II. Facts of Claim

16.

C & G Boat Works, Inc. admits C & G Boat Works, Inc.
contracted with Crescent Towing to construct Hull 117, a tug
boat, and as part of the contract, C & G Boat Works, Inc.
installed two GE 6L250 diesel engines manufactured by GE ("the
main engines") in Hull 117.

17.

C & G Boat Works, Inc. admits that on 30 September 2010,
C & G Boat Works, Inc. conducted sea trials of Hull 117 and that
during sea trials, the port main engine experienced high bearing
temperatures causing the port main engine to unexpectedly shut
down during sea trials.  In further response, C & G Boat Works,
Inc. admits the main engines were later inspected to determine
the cause of the high bearing temperatures and the unexpected
shut down of the port main engine.

18.

C & G Boat Works, Inc. admits that during inspection the
main bearings were pulled, examined and showed signs of damage
due to metal and particulate contamination in both the port and
starboard main engines.

19.

C & G Boat Works, Inc. admits that the W.T. Ames &
Associates report of 3 December 2010 sets forth that further
inspection of the lower end bearings and crankshaft journals of
the starboard engine revealed damage similar to the damage found
in the lower end of the port engine.  In further response, it is
further admitted the W.T. Ames and Associates report indicates a
bore scope was performed on the lube oil system piping which
revealed "significant amounts of various metal particles to be
present in random areas within the piping which appeared to
likely be attributable to torch cutting, arc welding and
mechanical grinding that had previously been carried out on the
piping sections as they were being assembled".

20.

C & G Boat Works, Inc. admits Busch and Associates, a
metallurgical engineering consultant, was contacted by Crescent
Towing to determine the cause, nature and extent of damage to
Hull 117's engines.  In further response, with respect to the
summarization of Courtney Busch's findings, C & G Boat Works,

Inc. admits the Busch report "Conclusions" set forth: "The main bearings were badly scored on both the port and starboard engines.  The scoring of the bearings was caused by aluminum oxide particles, steel shavings, weld spatter, and, to a lesser extent, silicon oxide.  These contaminates, in all probability, came from the oil lines provided by C & G Boat Works, Inc. as a result of improper cleaning of the oil lines after fabrication.

One main and one rod journal on the starboard engine were grooved and scored from the abrasive particles.  In all probability, all were damaged, requiring removal of the crankshaft from the engine."

21.

Except to admit correspondence dated 7 December 2010 was sent via certified mail to C & G Boat Works, Inc. by Senior Marine Claims Representatives, Carlos Marshall, on behalf of NAC and Underwriters, in response to a claim for coverage by C & G Boat Works, Inc. for damage to Hull 117's engines, and that Carlos Marshall, on behalf of NAC and Underwriters, denied coverage exists and contended that the policy excludes coverage on the basis of Addendum No. 2 of the Hull Builders Risks policy number MNB 1944-2010 purportedly on the basis that the policy excludes coverage "for any loss, damage or expense caused or arising in consequence of faulty production or assembly

procedures, even if constituting faulty design", all of which is
more fully set forth in the 7 December 2010 correspondence
itself, attached to Complainant's Complaint as Exhibit 4, the
remaining allegations of paragraph 21, as written, are denied.

22.

Except to admit that Mickey Cook prepared a 7 January 2011
synopsis of certain events, the remaining allegations of
paragraph 22, as written, are denied.

23.

Except to admit C & G Boat Works, Inc. subsequently
submitted written Declarations of four workers, Kenneth Sprouse,
Travis Hunt, Earl LeFave and Daryl Boutwell, the remaining
allegations of paragraph 23 are denied, with a specific denial
that the written statements submitted by C & G Boat Works, Inc.
personnel support Underwriters' position that the procedures used
were faulty.

24.

Except to admit that particles may have migrated from the
lube oil system fabricated and constructed by C & G Boat Works,
Inc. into the GE 6L250 main engines resulting in severe damage to
the main engines, the remaining allegations of paragraph 24, as
written, are denied.

25.

The allegations of the first sentence of paragraph 25

require no response by C & G Boat Works, Inc.; in further
response C & G Boat Works, Inc. shows that at all times it is
entitled to coverage under policy MNB 1944-2010, that
Underwriters have denied coverage and thereby created a real,
substantial and justiciable controversy between Underwriters and
C & G Boat Works, Inc. concerning C & G Boat Works, Inc.'s
entitlement to insurance coverage with respect to the policy of
insurance issued by Underwriters, policy number MNB 1944-2010.
C & G Boat Works, Inc. stipulates only that Underwriters' denial
of coverage has created a justiciable controversy.


III. The Insurance Policy


     As respects and in response to Underwriters' referenced
unnumbered, incomplete policy provision under the heading "III.
The Insurance Policy", C & G Boat Works, Inc. avers the quoted
Addendum No. 2 is incomplete and further avers that the omitted
portion of the Addendum No. 2, Item 1.a. reads, beginning at the
third clause:

> "Further, Underwriters shall not pay for any loss, damage,
> or expense caused or arising in consequence of:
>
> a) faulty workmanship, or the installation or use of
> improper or defective materials, <u>unless resulting in
> destruction, deformation, breaking, tearing, bursting,
> holing or cracking of the vessel, or any other like
> conditions, and which loss, damage or expense is not
> otherwise excluded under the terms and conditions of the
> war, strikes and other exclusions clause of the attached
> policy; provided that Underwriters in no event shall respond</u>

<u>for the cost or expense of repairing, replacing or renewing</u>
<u>any improper or defective materials;</u>" (Emphasis added)

IV.  COUNT I - DECLARATORY JUDGMENT

26.

Except as hereinabove expressly admitted, in response to the
allegations of paragraph 26, C & G Boat Works, Inc. repeats, re-
alleges, re-avers and incorporates its answers, defenses and
averments to paragraphs 1 through 25 by reference as though
copied herein *in extenso.*

27.

C & G Boat Works, Inc. denies Underwriters are entitled to
reserve the right to any other term, condition or exclusion in
the policy.

28.

Except to admit that C & G Boat Works, Inc. has made a claim
for insurance benefits under policy number MNB 1944-2010 as a
result of the damage to the starboard and port main engines of
Hull 117, the remaining allegations of paragraph 28, as written,
are denied.

29.

In response to the allegations of paragraph 29, C & G Boat
Works, Inc. shows that at all times it is entitled to coverage
under policy MNB 1944-2010, that Underwriters have denied
coverage and thereby created a real, substantial and justiciable
controversy between Underwriters and C & G Boat Works, Inc.

concerning C & G Boat Works, Inc.'s entitlement to insurance coverage with respect to the policy of insurance issued by Underwriters, policy number MNB 1944-2010.

30.

In response to the allegations of paragraph 30, C & G Boat Works, Inc. shows that at all times it is entitled to coverage under policy MNB 1944-2010, that Underwriters have denied coverage and thereby created a real, substantial and justiciable controversy between Underwriters and C & G Boat Works, Inc. concerning C & G Boat Works, Inc.'s entitlement to insurance coverage with respect to the policy of insurance issued by Underwriters, policy number MNB 1944-2010.

AND NOW, in further response:

31.

C & G Boat Works, Inc. avers at all pertinent times there was in full force and effect a policy of insurance providing Builders Risk coverage to C & G Boat Works, Inc. with a specific grant of coverage under Part I - Hull Section for "all risks of physical loss or damage to the vessel".  C & G Boat Works, Inc. further avers that no exclusion cited by Complainant, Underwriters, applies to preclude the risk of damage to the Hull's main engines being fully covered under the facts and circumstances presented herein.

11

32.

C & G Boat Works, Inc. specifically avers that Part I – HULL SECTION coverage and Addendum No. 2 to the HULL SECTION coverage provide no basis for Underwriters to deny coverage to C & G Boat Works, Inc.

33.

C & G Boat Works, Inc. denies Underwriters are entitled to reserve the right to assert any other term, condition or exclusion contained in the policy, and C & G Boat Works, Inc. moves to strike Underwriters' pleading to the extent of Underwriters' attempt to reserve an unstated term, condition or exclusion in support of its previously issued denial of coverage.

## II.

## C & G BOAT WORKS, INC.'S COUNTERCLAIM FOR DECLARATORY JUDGMENT

AND NOW, assuming the position of counterclaimant, C & G Boat Works, Inc., brings this Counterclaim for relief for Declaratory Judgment against Underwriters and respectfully avers:

### Jurisdiction and Venue

1.

Counterclaimant, C & G Boat Works, Inc., is a corporation organized under the laws of the State of Alabama.

2.

Counterdefendants (the "Underwriters") are, respectively, corporations organized under the following laws:

A.   NAC is a company organized and existing under the laws of the State of Massachusetts.

B.   National Union Fire Insurance Company of Pittsburgh, PA is a company organized and existing under the laws of the State of Pennsylvania.

C.   Indemnity Insurance Company of NA is a company organized and existing under the laws of the State of Pennsylvania.

D.   Great American Insurance Company is a company organized and existing under the laws of the State of Ohio.

E.   AGCS Marine Insurance Company is a company organized and existing under the laws of the State of Illinois.

F.   Essex Insurance Company is a company organized and existing under the laws of the State of Delaware.

G.   Catlin Insurance Company, Inc. is a company organized and existing under the laws of the State of Texas.

H.   Zurich American Insurance Company is a company organized and existing under the laws of the State of New York.

I.   Travelers Insurance Company is a company organized and existing under the laws of the State of Connecticut.

3.

Jurisdiction of this Court is founded upon 28 U.S.C. §1332. Underwriters are diverse from Counterclaimant and the amount in controversy exceeds $75,000 exclusive of interest and costs in an action based on diversity of citizenship and further, 28 U.S.C. §1333(1) in that this is a civil action within the admiralty and maritime jurisdiction of this Court.

4.

Venue is proper in this district pursuant to 28 U.S.C. §1391(a), 1391(b) and under judicial decisions governing venue and actions within the admiralty and maritime jurisdiction, or both.

5.

Counterclaimant, C & G Boat Works, Inc., brings this claim for Declaratory Judgment under Federal Rule of Civil Procedure 57 and 28 U.S.C. §§2201 and 2202.

### **Factual Basis of Claim**

6.

C & G Boat Works, Inc. is a boat building and repair company located in Mobile, Alabama, providing various services for its customers including new vessel construction, vessel repairs and specializes in major overhauls of tugboat, fishing boats, push boats, offshore supply boats, utility vessels, dive boats, crew boats and barges.

14

7.

C & G Boat Works, Inc. contracted with Crescent Towing to construct C & G Boat Works, Inc.'s Hull 117, also known as the tractor tug "JK McLean".  In conjunction with the contract with Crescent Towing, C & G Boat Works, Inc. installed the power package for Hull 117 which included two six cylinder GE 6L250 diesel engines, the port and starboard main engines, sometimes referred to as the "main engines" in Hull 117.

8.

The power package for Hull 117, which included the two six cylinder GE 6L250 diesel engines, was supplied by GE without pre-packaged piping systems, and as a consequence, the lube oil piping systems to be connected to the main engines were fabricated and installed by C & G Boat Works, Inc.

9.

At all times pertinent, C & G Boat Works, Inc. had in place required procedures to be followed sequentially to avoid and/or remove byproducts and contaminants created by and/or as a result of cutting and/or welding techniques utilized by C & G Boat Works, Inc. welders in the installation and fabrication of the lube oil piping system.

10.

As part of C & G Boat Works, Inc.'s procedure, root passes were to be made utilizing TIG welding procedures with stick

15

welding not to be used and thereby avoid weld splatter/flux including slag.  C & G Boat Works, Inc.'s procedures dictated that burning with a torch to obtain pipe penetration was to be avoided, and in keeping with C & G Boat Works, Inc.'s procedures, in lieu of burning couplings with a cutting torch, C & G Boat Works, Inc.'s procedures dictated utilization of cold cutting methods or drilling.

11.

After the fabrication, installation and flushing of the lube oil piping system was completed, on or about 30 September 2010, C & G Boat Works, Inc. conducted a sea trial of the C & G Boat Works, Inc. Hull 117 at which time the port main engine unexpectedly shut down.  Upon inspection of the port main engine after sea trials were terminated, damage was determined to be present in the main bearings of the port main engine, and upon inspection of the starboard main engine, damage was determined also to be present in the starboard main engine to the main bearings due to metal and particulate contamination.

12.

Further inspection revealed damage to the lower end bearing and crankshaft journals of the starboard engine.

13.

A bore scope performed on the lube oil system piping of the main engines revealed significant amounts of various metal

particles to be present in random areas of the piping which appeared to likely be attributable to torch cutting, arc welding and mechanical grinding that had been carried out on the piping sections of the lube oil systems as they were being fabricated, constructed and installed by C & G Boat Works, Inc. personnel. After various piping sections of the lube oil system were removed further metal contamination of the lube oil piping system was determined to be present according to marine surveyor, W.T. Ames & Associates.

14.

Busch and Associates, a metallurgical engineering consultant engaged by Crescent Towing to determine the cause, nature and extent of engine damage to the Hull 117 GE engines, determined that the main bearings on both the port and starboard engines were badly scored, the scoring of the bearings was caused by aluminum oxide particles, steel shavings, weld spatter, and, to a lesser extent, silicon oxide entering into the engines.

15.

Busch and Associates further opined these contaminants, in all probability, came from the port and starboard oil lines provided and fabricated by C & G Boat Works, Inc. The metal contamination of the piping sections of the lube oil piping system of the two main engines for Hull 117 was reported to have resulted from torch cutting, arc welding and mechanical grinding

17

of the piping system and which consequently resulted in the
contaminants entering the two main engines and causing
significant damage to the internal parts of the GE engines as a
consequence of migration of contaminants from the piping systems
into the engines during the course of the sea trial.

16.

At all times relevant, C & G Boat Works, Inc. had in place
defined and appropriate required procedures, appropriate for the
scope of the work, to be followed sequentially to avoid
contamination of the lube oil systems piping fabricated by C & G
Boat Works, Inc. personnel.  During the course of the
installation and fabrication of the lube oil systems piping, it
was determined that an improper welding root pass at a 90 degree
elbow in the lube oil line between an engine filter and the
engine of Hull 117 was performed utilizing a stick welding
technique which was not in accordance with C & G Boat Works,
Inc.'s procedures, which resulted in a greater volume of slag to
enter into or be deposited into the lube oil system piping, later
migrating into the internals of the GE main engines causing the
aforereferenced damage.  A failure to follow the defined C & G
Boat Works, Inc. procedures by using a burning torch for coupling
penetration rather than a cold cutting technique resulted in the
entry of contaminants from the torch cutting, arc welding and
mechanical grinding into the lube oil piping and subsequently

18

into the internals of the GE engines resulting in severe damage to the main engines.

17.

Specifically, after the installation of the lube oil piping system, but prior to flushing the system, a coupling was installed between the lube oil filter and the GE engine using a burning torch to penetrate the four inch pipe instead of a cold cut or drill which was the appropriate method in accordance with C & G Boat Works, Inc. procedures which unbeknownst to C & G Boat Works, Inc. were not followed during the installation and fabrication of the lube oil piping system leading to the engines.

18.

At all times relevant, Counterdefendants, Underwriters, issued to Counterclaimant, C & G Boat Works, Inc., a policy of insurance ("the Policy"), policy number MNB 1944-2010, in full force and effect, insuring C & G Boat Works, Inc. for Hull Builders Risks.  A copy of the referenced policy is attached hereto as Exhibit "A".

19.

Under the Policy, Underwriters undertook the obligation to indemnify the insured, C & G Boat Works, Inc., for any physical loss of or damage to the vessel including its engines and appurtenances, occurring during the currency of the policy.

20.

Under the Policy, Counterdefendants, Underwriters, undertook pursuant to the Hull Builders Risks coverages and pursuant to the American Institute Builder's Risks Clauses PART 1-HULL SECTION at lines 59-60 to insure "against all risks of physical loss of or damage to the Vessel occurring during the currency of this Policy", as amended by Addendum No. 2.

21.

Addendum No. 2 provides in pertinent part:

"I.  It is hereby understood and agreed that lines 61 and 62 of the "Part I – HULL SECTION, HULL RISKS" are deleted and the following substituted therefore:

> Subject to the provisions of exclusion (b) of the following paragraph, in the event that faulty design of any part of the parts should cause physical loss of or damage to the Vessel this insurance shall not cover the cost or expense of repairing, replacing or renewing such part of parts, nor any expenditure incurred by reason of a betterment or alteration in the design. Faulty design shall include, but not be limited to, error, omissions or deficiencies in plans, drawings, specifications or calculations.

Further, Underwriters shall not pay for any loss, damage or expense caused or arising in consequence of:

a)  Faulty workmanship, or the installation or use of improper or defective materials, unless resulting in destruction, deformation, breaking, tearing, bursting, holing or cracking of the Vessel, or any other like conditions, and which loss, damage or expense is not otherwise excluded under the terms and conditions of the war, strikes and other exclusions clause of the attached policy; provided that Underwriters in no event shall respond for the cost or expense of repairing, replacing or renewing any improper or defective materials;

20

    b)    Faulty production or assembly procedures even if
constituting faulty design."

22.

Counterclaimant has made demand upon Counterdefendants,
Underwriters, for insurance coverage in respect of damage to two
newly manufactured GE 6L250 main engines, manufactured by General
Electric Corporation, described herein, which were damaged to the
extent that they were required to be replaced as a result of
contaminants entering into the engines reportedly sustained as a
consequence of metal contamination of the lube oil systems of the
engines, which contaminants were determined to have resulted from
torch cutting, arc welding and mechanical grinding that C & G
Boat Works, Inc. personnel carried out while fabricating those
piping systems and which C & G Boat Works, Inc.'s subsequent
attempts in cleaning and flushing the systems prior to the
engines being commissioned, failed to effectively remove.

23.

C & G Boat Works, Inc. notified Underwriters of the damage
to the engines on 5 October 2010, with the first notice of loss
to Hull 117 GE engines to be forwarded to Underwriters on
5 October 2010 referencing subscription policy number MNB 1944-
2010 providing coverage from 7 March 2010 to 7 March 2011.

24.

On 7 December 2010, Carlos Marshall, senior claims
representative representing NAC, lead underwriter, acting for the

21

account, benefit and on behalf of Counterdefendants,

Underwriters, declined coverage for the engine loss asserting as

a basis for the declination of coverage "the policy excludes

coverage for any loss, damages or expense cause or arising in

consequence of faulty production or assembly procedures, even if

constituting faulty design."

25.

   Counterdefendants, Underwriters, rely on Addendum No. 2 and

a particular exclusion which sets forth:

"1.  It is hereby understood and agreed that lines 61 and 62 of
the "PART 1 - HULL SECTION, HULL RISKS" are deleted and the
following substituted therefore:
     ...

   Further, Underwriters shall not pay for any loss, damage or
expense caused or arising in consequence of:

   b) Faulty production or assembly procedures even if
constituting faulty design:"

26.

   Counterdefendants, Underwriters, denied coverage, contending

that the damage to the engines is not covered, claiming the

damage arose in consequence of "faulty production or assembly

procedures".  On the basis of the above quoted clause,

Underwriters contend there is no coverage for the damage to the

engines.

27.

   Counterclaimant, C & G Boat Works, Inc., contends coverage

exists for the damages to the engines, and the exclusion asserted

by Underwriters does not apply to this claim.

28.

At all times prior to, at the time of and post incident, Counterclaimant, C & G Boat Works, Inc., had in place assembly procedures for fabricating and/or cleaning the piping system which was fabricated by C & G Boat Works, Inc. and attached to the engines.  (See Declarations of Kenneth W. Sprouse, Travis L. Hunt, Earl J. LeFave and Daryl D. Boutwell, attached hereto as Counterclaimant Exhibit "B", *in globo.*)

29.

Contrary to Counterdefendants, Underwriters' assertions, Underwriters have not identified a valid basis for their claim that faulty production or assembly procedures were a predicate for declination of coverage, and there is no evidence to suggest or establish that any of the procedures in place for fabricating and/or cleaning the piping system were faulty or insufficient in any respect.

30.

Pursuant to the terms and conditions of the referenced policy, Underwriters have a duty to indemnify C & G Boat Works, Inc. for costs of replacing the above described engines, and the claim clearly falls within the scope of coverage of the Hull Policy.

### Declaratory Relief

31.

C & G Boat Works, Inc. shows that at all times it is
entitled to coverage under policy MNB 1944-2010, that
Underwriters have denied coverage and thereby created a real,
substantial and justiciable controversy between Underwriters and
C & G Boat Works, Inc. concerning C & G Boat Works, Inc.'s
entitlement to insurance coverage with respect to the policy of
insurance issued by Underwriters, policy number MNB 1944-2010.
The Hull Policy clearly provides coverage for this loss, and no
exclusion applies to the loss.  In particular, the above
referenced exclusion claimed by Underwriters is not triggered, as
the evidence establishes there were procedures in place for
fabricating and/or cleaning the piping systems which were not
faulty or deficient in any respect.

32.

C & G Boat Works, Inc. is entitled to a judgment declaring
and adjudging the rights and obligations of the parties under the
applicable policy issued to C & G Boat Works, Inc. by
Underwriters.

WHEREFORE, Counterclaimant, C & G Boat Works, Inc., prays
that this Court declare and decree that the policy of insurance
issued by Underwriters, subscription policy MNB 1944-2010,
affords coverage for the damages to the engines at issue.

24

That the Court declare and decree that Underwriters are required to indemnify C & G Boat Works, Inc. for the damages that C & G Boat Works, Inc. may become legally obligated to pay for the full costs of replacement of the engines.

That C & G Boat Works, Inc. be afforded any such other and further relief as the Court may deem proper to include court costs and attorney's fees incurred in pursuing this claim.

Respectfully submitted,

KRAFT GATZ LLC

BY: _____
Ralph E. Kraft (7918)
F. Douglas Gatz, Jr. (16934)
600 Jefferson Street, Suite 410
Lafayette, LA 70501
(337) 706-1818
(337) 706-1828 Telefax
Attorneys for Defendant/Counterclaimant,
C & G Boat Works, Inc.

CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send a notice of electronic filing to the following and/or the foregoing was sent to the following via facsimile and/or first class mail to any non-CM/ECF participant:

John W. Johnson II
LaBella S. Alvis
Christian & Small, LLP
505 North 20th Street, Suite 1800
Birmingham, AL 35203

Lafayette, Louisiana, this _____ 30th _____ day of June 2011.

_____
Ralph E. Kraft
F. Douglas Gatz Jr.